APPEALS OF LOUISE P. V. WHITCOMB, CHARLOTTE A. W. LEPIC, AND MARGUERITE T. WHITCOMB.

Docket Nos. 1946, 1947, 2321, 1948, 1949. Submitted April 20, 1925. Decided April 23, 1926.

Taxpayers are life tenants under a trust which includes depreciable assets. The trustee, in returning the net income of the trust, deducted and was allowed the deduction of an allowance for exhaustion, wear and tear. Distributions to the beneficiaries of life interests were made irrespective of such allowances, and the Commissioner, in auditing the returns of the beneficiaries did not permit the said allowance for depreciation to be divided amongst them. *Held*, that, under section 219 of the Revenue Act of 1918, life beneficiaries are not entitled to allowances which relate to capital transactions and the corpus of the estate. Article 347, Regulations 45, as amended by T. D. 2987, approved.

*W. W. Spaulding, Esq.*, for the taxpayers.
*Laurence Graves, Esq.*, for the Commissioner.

Before JAMES, SMITH, and TRUSSELL.

These are appeals from determinations of deficiencies as to Louise P. V. Whitcomb for the years 1917, 1918, 1919, and 1920, in the amounts of $351.17, $3,491.12, $3,196.29, and $3,292.05; as to Charlotte A. W. Lepic for the years 1917, 1918, 1919, and 1920, in the amounts, respectively, of $364.80, $3,443.12, $3,196.29, and $3,433.63; and as to Marguerite T. Whitcomb for the years 1919 and 1920, in the amounts, respectively, of $700.51 and $547.71.

### FINDINGS OF FACT.

The taxpayers are nonresident aliens and, during the taxable years here in question, resided in France. Louise P. V. Whitcomb was, during those years, the widow of A. C. Whitcomb, deceased. Charlotte A. W. Lepic was the daughter of A. C. Whitcomb, and Marguerite T. Whitcomb was the widow of Adolphe Whitcomb, deceased, son of A. C. Whitcomb.

A. C. Whitcomb, deceased, left a will, the seventh clause of which is as follows:

I give to my hereinafter named Executor Jerome Lincoln, of said San Francisco, all the rest of my property, real, personal or mixed, except what I may have in France, of every kind and nature, and not hereinbefore disposed of, after the payment of my debts, in Trust, nevertheless, to pay over to my said wife, Louise Palmyre Vion Whitcomb, one third part of the interest thereof or income therefrom for and during her natural life, and the other two-thirds part to my two children born of her; one Adolphe born on or about the 23rd day of February 1880, and the other Charlotte Andree, born on or about the 4th day of December, 1882, with the reversion or remainder of the whole three third parts to the descendants per stirpes of the said two children, if any be alive at the time of the death of the said two children; and if none be alive at that time, to Harvard College in conformity with the provisions named or indicated in Section Six (6) of this will having reference to said Harvard College. * * *.

The foregoing provision of the will has been judicially construed as providing to the widow, Louise Palmyre Vion Whitcomb, an estate for life in one-third of the income of the trust, an estate for life to each of the two children in one-third of the income of the trust continuing to the death of the survivor and, because of the death of Adolphe Whitcomb, an estate for the life of Charlotte A. W. Lepic, in the share of Adolphe to his widow and his two children, share and share alike.

The net income of the trust estate is distributable periodically to the beneficiaries and is so distributed.

In preparing the fiduciary returns of the trust estate for the years 1917 to 1920, inclusive, the trustee included therein the income of the estate for the respective years and deducted therefrom expenses, including interest, taxes, and also the allowance provided by the statute for exhaustion, wear and tear on account of the depreciable assets belonging to the trust. The difference between the gross income and deductions so made was shown on the fiduciary returns as the net income of the trust and as the aggregate distributable net income of the beneficiaries, the share and interest of each beneficiary being stated.

In preparing the income-tax returns of the beneficiaries of the trust for the years 1917 to 1920, inclusive, the trustee included therein, as the distributive share of the net income of the trust of each of said beneficiaries, that proportion of the net income of the estate as shown by the fiduciary return which the interest of the beneficiary in the income bore to the total income, namely, one-third to Louise P. V. Whitcomb, one-third to Charlotte A. W. Lepic, and one-third of the remaining one-third to Marguerite T. Whitcomb.

The Commissioner, in auditing the fiduciary returns of the trust, allowed depreciation as a deduction in determining the net income of the trust for each of the years under consideration, but, in auditing the returns for the several years of each of said beneficiaries, determined the distributive net income applicable to each of them as the share of the net income of the trust to which she was entitled, excluding from the said computation the said deductions on account of depreciation, so that, in determining the deficiencies here in issue, the Commissioner increased the net income of the said parties as reported by the trustee for the several years, in the amounts stated below:

> Estate of Louise P. V. Whitcomb: By $8,158.32 for 1917; by $15,854.96 for 1918; by $13,779.43 for 1919; by $12,276.40 for 1920.
>
> Charlotte A. W. Lepic: By $8,158.32 for 1917; by $15,854.96 for 1918; by $13,779.43 for 1919; by $12,276.40 for 1920.
>
> Marguerite T. Whitcomb: By $4,593.14 for 1919; by $4,092.13 for 1920.

### OPINION.

JAMES: The petitioners contend that the net income, the distributive share of which is taxable to these beneficiaries, is the statutory net income of the trust divided into the number of shares provided in the will. The Commissioner agrees that the statutory net income is the starting point of the computation, but contends that the distributive shares of life beneficiaries must be computed with due regard to what they actually receive under the trust as income and that the remainder interests must be given due consideration in the computation of such distributive shares.

The question calls for the construction of section 219 of the Revenue Act of 1918, and more particularly subdivisions (b) and (d) thereof. The pertinent provisions are as follows:

Sec. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

＊　　　＊　　．＊　　　＊　　　＊　　　＊　　　＊

(4) Income which is to be distributed to the beneficiaries periodically, ＊ ＊ ＊.

(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, ＊ ＊ ＊ and in cases under paragraph (4) of subdivision (a) of this section the fiduciary shall include in the return a statement of each beneficiary's distributive share of such net income, whether or not distributed before the close of the taxable year for which the return is made.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

(d) In cases under paragraph (4) of subdivision (a), ＊ ＊ ＊ the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary his distributive share, whether distributed or not, of the net income of the estate or trust for the taxable year, ＊ ＊ ＊.

Provisions of similar import are contained in the Act of 1916, as amended by the Act of 1917.

Nowhere in the Act is there contained a specific definition of the term " distributive share." Treasury Decision 2987, dated March 1, 1920, forms the basis of the Commissioner's action in the instant appeal and is so important to an understanding thereof as to warrant its reproduction in full.

Regulations No. 45 are amended by adding thereto article 347 to read as follows:

ART. 347. *Estates and trusts which can not be treated as a unit.* In the case of certain estates and trusts it is recognized that the estate or trust can not be treated as a unit for income-tax purposes and may represent an aggregate of distinct interests, to all of which the fiduciaries are responsible. In such cases the procedure stated in this article should govern. The following are recognized as cases which can not be treated as a unit and must, therefore, be governed by this article: (a) When there is income distributable periodically and also income which is to be accumulated in trust, held for future distribution, or added to the corpus; (b) when there is income distributable periodically and also income (according to the Federal income-tax statutes and regulations) which is not distributable periodically under State law, e. g., gains from sale of capital assets, stock dividends; (c) when there is income distributable periodically and deductions (according to Federal income-tax statutes and regulations) which are not deductible under State law from the distributable income, e. g., losses from the sale of capital assets, depletion, depreciation.

In ascertaining whether an estate or trust comes within any one of the cases just enumerated, the provisions of the Federal statutes and regulations—rather than the provisions of the will or trust and the provisions of State laws—shall determine what items constitute taxable gross income or allowable deductions; the provisions of the will or trust and of State laws shall determine the allocation of items of gross income or deduction; that is,

to which of the different interests making up the whole such items shall be charged or allowed. In cases which are to be treated under this article, the items of gross income and deduction as determined by the Federal income-tax statutes and regulations must be scrutinized and classified in accordance with the provisions of the will or trust or rules of local law into two classes, one subject to the procedure specified in subdivision (c) of section 219, and the other to the procedure specified in subdivision (d) of section 219. The result will be that the beneficiary to whom income is to be distributed periodically must include, in computing his net income, the amount actually distributable to him (except exempt income) even though the aggregate of the distributive shares should' be larger than the net income of the estate or trust computed as a unit. Any gain, profit, or income which is not periodically distributable must be included in computing the net income of the estate or trust, so that the fiduciary will pay the tax upon any excess of the net income of the estate or trust computed as a unit over the aggregate distributive shares.

For example, a trust is created the income of which is distributable periodically for the life of the beneficiary, the remainder over to others. The trust has the following items of income: Rent, $3,000; interest, $2,000; gain on sale of capital assets, $1,500; cash dividend, $1,000. And deductions: General expenses (all deductible from distributable income), $700; depreciation, $300; loss on sale of capital assets, $3,000. Under the terms of the trust $5,300 will be distributed to the beneficiary, viz, rent, $3,000; plus interest, $2,000; plus dividend, $1,000; less general expenses, $700. The gain and loss on the sale of capital assets will be considered capital items affecting the corpus only, and the items of depreciation will not affect the amount to be · distributed, there being no rule of State law or provision of the trust requiring this deduction from distributable income. In such a case the fiduciary must report on Form 1041, showing a net income for the trust of $3,500, and must show as the distributive share of the beneficiary the $5,300 to which he is entitled. The beneficiary must account for the amount actually distributable to him as income, viz, $5,300, as provided in section 219 (d) and will be entitled to a credit of $1,000 on account of the dividends in computing the normal tax, but not to any deduction on account of depreciation or capital losses.

If there had been no loss on the sale of capital assets so that the net income of the estate or trust was $6,500, Form 1041 should show the distributive share of the beneficiary as $5,300 and the distributive share of the fiduciary as $1,200; and the fiduciary should file a separate return on Form 1040-A, reporting $1,200 for taxation.

DANIEL C. ROPER,
*Commissioner of Internal Revenue.*

The particular situation of these taxpayers is covered in subdivision (c) of the first paragraph of the foregoing, that is, the income in this case is distributable periodically, but there are reductions (in this case depreciation) which do not affect the computation of distributable income of the life beneficiaries but do affect the corpus of the estate. This is illustrated in the third paragraph, wherein is set forth ordinary income subject to distribution, in the total amount of $5,300, and capital losses which reduce the income of the estate for the purpose of the fiduciary return, but relate to the separate entities represented by the estate as a whole, ultimately consisting of the remaindermen.

We are dealing here, then, with a situation in which there are distributive shares of life tenants and distributive shares in effect of remaindermen, which latter have to do with the capital assets and capital transactions of the estate and have nothing to do with the life tenancy and the income distributable thereunder. The situation is perfectly clear in the case of the estate or trust in which a portion of the taxable net income is derived from capital sources. In such a case the ordinary income is distributed to the life beneficiaries and the capital gains are reported by the fiduciary and taxed to him. The situation is not different in the case of capital losses, that is, the ordinary income is distributed to the life tenants and the capital losses are absorbed by the estate or trust as the representative of the remaindermen. True, in the one case the fiduciary must make an income-tax return and pay tax upon the gain derived from capital transactions, whereas, in the case of losses, no such return is required and of course no such tax is collected, but the distributive share of the life tenant is unchanged in either case. It is the share to which he is entitled of the ordinary net income of the estate, that income which under the will or trust instrument or under the laws of the jurisdiction under which the estate or trust is being administered, is ordinarily distributable to life tenants. The other gains taxable or deductions allowed relate not to such ordinary income, but to capital transactions in which the life tenant has no interest upon which he may be charged for tax as to gains and as to losses which he may not be permitted to use to reduce the distributive share of the income which he receives and upon which he should pay tax. His distributive share remains unchanged whether the capital transactions of the estate or trust show a gain or a loss, and he has no interest in that aspect of the trust, except the natural future interest in the increase of his income in the case of gains or in its decrease in the case of losses.

There is, then, in all of these cases, a taxable entity represented by the estate or trust, in the background of which lie the remaindermen who will ultimately divide the corpus. These remaindermen are not themselves taxable upon the gains, nor themselves entitled to deduct the losses, but the entity, the trust, which is administering the corpus for the time being, is taxable on such gains and is entitled to the deduction of such losses. It matters not that in many cases of losses under these circumstances there remains no income from which to deduct them. The estate in such circumstances is in no different position from that of any taxpayer whose losses exceed his gains. He is fortunate only in that he has no tax to pay.

It is not altogether fortunate that Treasury Decision 2987 contains the following language:

The result will be that the beneficiary to whom income is to be distributed periodically must include, in computing his net income, the amount actually

distributable to him (except exempt income) even though the aggregate of the distributive shares should be larger than the net income of the estate or trust computed as a unit.

The aggregate of the distributive shares, when due regard is had for the estate as an entity, is never other than the taxable net income of the estate. The fact merely is that the sum of the plus quantities is, where losses occur, in excess of the net income and is reduced by the minus quantities, namely, capital losses, depletion or depreciation.

There remain to be considered only certain points made by the taxpayer having to do particularly with the alleged erroneous reasoning in *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428. In that case the court said : " It is necessary to resort to the instrument containing the terms of the trust to determine her distributive share." This the taxpayer contrasts with the language of the Supreme Court in *Merchants' Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509, in which the court said : " The provision of the will may be disregarded. It was not within the power of the testator to render the fund nontaxable."

As we have pointed out above, the construction of the language " distributive share " is entirely consistent with the position taken by the Commissioner, and, in fact, is the only position which possibly can be taken in the case of returns of estates or trusts, where capital transactions and ordinary income are commingled in a single return but must be separated into parts to represent the various interests concerned therein. This, we believe, is all that the court meant in *Baltzell* v. *Mitchell*, and, as so interpreted, is certainly entirely correct.

Taxpayer also points out the identical language between sections 218 and 219, wherein " distributive share " of partners is contrasted with " distributive share " in the case of trusts. There again the question is one of fact as to what the distributive share is. Partnership income is quite commonly distributed in a manner different from the interests of the partners in capital, yet it is not often contended that the partners should be taxed upon shares computed upon the basis of their interest in capital alone, yet that, in a measure, is the contention here, namely, that life beneficiaries who have no interest, except in income, should be affected by the fact that capital transactions relating solely to remainder interests have occurred and affected the trust as an entirety.

Nor do we believe, as the taxpayer claims, that the construction which we have placed upon the statute above is one outside and beyond the statutory language. Certainly such is not our intent, for if the words " distributive share " are not subject to the construction given, there is no other place in the statute in which authority can be found for taxing as income the amount by which the Commis-

sioner here seeks to increase the income returned by these taxpayers. That income must be then distributive shares or income taxes can not be imposed thereon. In our opinion, Congress, while using general language, used language peculiarly apt and particularly adapted to the purpose in mind. Any attempt to be specific would have resulted in far greater confusion than that incident to the application of general language to situations which from time to time are necessarily complex in fact, if not in the principles to be applied.

The taxpayers also argue that depreciation, being a matter of annual deduction, is a deduction which is properly allowable to life beneficiaries. We think the answer is clear; depreciation or "exhaustion, wear and tear," in the language of the statute, allowed by the Act, relates to capital assets. The depreciation is not in the income but in the capital, and it affects income only in that, if the depreciable assets are not replaced, the income sooner or later will cease. This might result, as the taxpayer points out, in no assets being left for the remaindermen, but this certainly is not a matter in which a life tenant has any particular interest.

We are of the opinion that the Commissioner committed no error in the determinations here under appeal.

> The deficiencies are: For the year 1917, Louise P. V. Whitcomb, $351.17; Charlotte A. W. Lepic, $364.80—total $715.97. For the year 1918, Louise P. V. Whitcomb, $3,491.12; Charlotte A. W. Lepic, $3,443.12—total $6,934.24. For the year 1919, Louise P. V. Whitcomb, $3,196.29; Charlotte A. W. Lepic, $3,196.29; Marguerite T. Whitcomb, $700.51—total $7,093.09. For the year 1920, Louise P. V. Whitcomb, $3,292.05; Charlotte A. W. Lepic, $3,433.63; Marguerite T. Whitcomb, $547.71—total $7,273.39. Order will be entered accordingly.

On reference to the Board, STERNHAGEN concurs in the result only.